Mauri Long
DILLON & FINDLEY, P.C.
1049 W. 5th Avenue, Suite 200
Anchorage, AK 99501
Phone 277-5400
Fax 277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

HARRY CURTIS LUSK,

Plaintiff,

vs.

UNITED STATES OF AMERICA,

Defendant.

Case No. 3:10-cv-00204-RRB

**PLAINTIFF'S MOTION AND MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff seeks partial summary judgment pursuant to Fed. R. Civ. P. 56 that as a matter of law and fact the certified registered nurse anesthetist (CRNA) Brenda Bowler was an agent of the Federal Government at the time of Mr. Lusk's surgical procedure.

Harry Curtis Lusk v. USA
Case No. 3:10-cv-00204-RRB
PLAINTIFF'S MOTION AND MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT
Page 1 of 34

There is ample evidence to determine that CRNA Bowler is an agent of the Federal Government ("Government").[1] Early resolution of this issue is necessary to avoid significant additional costs in the litigation and a subsequent appeal after a full trial. The issue must be decided before discovery closes, the date for supplemental experts passes, and experts are deposed in order to avoid significant prejudice to Mr. Lusk and unnecessary costs to both parties.

Plaintiff asserts that the type of conduct the Government engaged in by holding out the nurse anesthetist as an employee/agent of the Government before and during this litigation, then denying the same should be firmly discouraged by this Court. If not, due diligence will require that ***all*** Federal Tort Claims Act (FTCA) cases be filed in both state and federal court simultaneously, before the administrative claim has been exhausted, because no attorney could rely on the affirmative representations of the Government, even if those representations come from an individual, as here, with actual or apparent authority to bind the Government.

---

[1] As discussed *infra*, Brenda Bowler's deposition was taken, as were the depositions of the two other referenced health care providers. Additionally, initial expert disclosures have been exchanged which revealed for the first time the Government's attempt to blame CRNA Bowler for Mr. Lusk's injuries.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

## II. FACTS

### A. The Injury

On April 17, 2007, Harry Lusk, a 15-year veteran of the United States Army, travelled to Anchorage from his home in Fairbanks to undergo outpatient rotator cuff surgery at the VA Ambulatory Surgery Center. He awoke from surgery with a permanent spinal cord injury. Mr. Lusk cannot use the fingers in either hand; he cannot form a fist or grip anything. Mr. Lusk's devastating injury is permanent and it is especially debilitating for a man who enjoyed hunting, fishing, and a self-reliant lifestyle in the Alaskan wilds.

### B. Procedural History

Mr. Lusk's surgery was performed by Dr. Gates, an orthopedic surgeon. Brenda Bowler, a certified registered nurse anesthetist, provided Mr. Lusk's anesthesia care. From the beginning of the litigation, Plaintiff asserted that his prior cervical stenosis was exacerbated by his positioning during the surgery causing compression of his spinal cord.[2] Because the medical records are not clear, Mr. Lusk identified Dr. Gates, Mr. Hull and CRNA Bowler as potentially responsible parties.

---

[2] *See* Pl.'s Compl. [Docket 1].

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Prior to filing an administrative claim and through years of litigation, the Government represented that Brenda Bowler was an employee of the Federal Government.[3] Those representations took many forms, as outlined in detail in Plaintiff's Opposition to Motion to Amend Answer.[4] Mr. Lusk incorporates the facts from his Opposition to the Motion to Amend Answer here.[5]

Before filing the Form 95 Administrative Claim, Plaintiff's counsel contacted the Veteran's Administration (VA) General Counsel to ask about employee status and the propriety of the claims. The VA General Counsel, before any statute of limitations had run, affirmed that CRNA Bowler was an employee of the Government.[6]

The VA investigated and considered Mr. Lusk's Form 95 Claim for nearly a year, from April 2009 to March 2010.[7] In its Final Denial, the VA disclosed that its "[i]nvestigation included interviews with the VA healthcare providers who were involved in

---

[3] *See* Pl.'s Opp'n to Mot. to Amend Answer [Docket 18].

[4] *Id.* at 3-11.

[5] *Id.*

[6] Aff. of Counsel [Docket 19].

[7] Exhibit A, Final Denial of Administrative Tort Claim, March 16, 2010.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

your client's care and independent medical experts," and "VA and non-VA medical records and medical literature."[8] Based on that investigation, the VA claimed it found no employee wrongful act or omission during the surgery that caused Mr. Lusk's injury.[9] At that time, CRNA Bowler was an employee, based on the VA's General Counsel's affirmative statements and as later specifically affirmed in the Government's Answer to the Complaint.[10]

The Government specifically denied that CRNA Bowler's conduct was negligent in both the denial of the tort claim and in its Answer.[11] But when it realized it had an opportunity to claim CRNA Bowler was not a VA employee, the Government moved to amend its Answer to deny that CRNA Bowler was a federal employee.[12] The Government conceded that the procedural history of this case was accurately reflected in Mr. Lusk's Opposition

---

8 *Id.*

9 *Id.*

10 *See* Original Answer to the Compl. [Docket 7].

11 *Id.*

12 *See* United States' Mot. for Leave to File Amended Answer [Docket 17].

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

to the Motion to Amend Answer.[13] Importantly, the Government did not move to amend the denial of CRNA Bowler's negligence in the Answer. Yet its recent expert report shows that the Government now seeks to place the blame for Mr. Lusk's substantial permanent injuries on her.

In discovery, Mr. Lusk asked the Government to reveal who it intended to blame for his injuries.[14] The Government answered that Mr. Lusk's injuries were a result of his preexisting condition.[15] Again, the Government did not claim that CRNA Bowler caused Mr. Lusk's injuries. Even after the Government amended its Answer, it never supplemented its answers to interrogatories to reveal its new strategy of blaming CRNA Bowler for Mr. Lusk's injuries.

CRNA Bowler was deposed on June 13, 2012, three months before the Government disclosed its expert reports, (two months before those reports were due).[16] At the deposition, the

---

13 *See* United States' Reply to Pl.'s Opp'n to Mot. for Leave to File Amended Answer at 1 [Docket 21].

14 Exhibit B, Def.'s Resp. to Pl.'s First Set of Disc. Req. to Def., Aug. 31, 2011.

15 *Id.*

16 The Government's expert reports were due July 27, 2012. See Judge Beistline's Text Order [Docket 31]. The Government asked for an extension until September in order to obtain a neurologist, which was non-opposed. See Judge Beistline's Text

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Government gave no indication it was blaming CRNA Bowler for Mr. Lusk's injuries. The Assistant United States Attorney examining CRNA Bowler did not ask a single question indicating the Government was critical of her care of Mr. Lusk. In fact, the Government did not even mention the dosage of Sevoflurane,[17] which is Dr. Eisler's main criticism of CRNA Bowler.[18] CRNA Bowler was not asked to defend her anesthesiology care related to Mr. Lusk's blood pressure during the procedure.

CRNA Bowler was, however, questioned extensively about her employment at the VA. CRNA Bowler has worked at the VA since 1993.[19] It is her main source of employment.[20] While she considers herself an independent contractor, VA documents demonstrate that CRNA Bowler was considered by the VA to be an indefinite on-site employee as late as 2004.[21]

---

Order [Docket 37]. When CRNA Bowler was deposed, the Government had surely retained and consulted with Dr. Eisler, its expert, and must have known that Dr. Eisler intended to blame CRNA Bowler for Mr. Lusk's injuries.

[17] Sevoflurane is the anesthetic agent utilized by CRNA Bowler during the surgical procedure.

[18] Exhibit C, Expert Report of Dr. Eisler, Sept. 24, 2012.

[19] Exhibit D, Dep. of Brenda Bowler at 69, June 13, 2012.

[20] *Id.* at 76.

[21] *Id.* at 9; *see also* Exhibit E, Contract, Sept. 15, 2004.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 7 of 34

CRNA Bowler is a member of the medical staff at the VA.[22] In fact, the VA website listed CRNA Bowler as an Anesthetist under its "Our Doctors" link and included a picture of her.[23] From the 1990's until 2004, CRNA Bowler was the only anesthesia provider for the VA.[24] She was required to follow VA policy about what she wears during procedures.[25] CRNA Bowler cannot choose her patients or refuse to provide services to a patient she does not like.[26] The VA schedules the patients to whom CRNA Bowler provides anesthesia care.[27]

As a member of the medical staff at the VA, CRNA Bowler must abide by the detailed VA medical staff bylaws and handbooks.[28] The chief surgeon at the VA Ambulatory Surgery Center is CRNA Bowler's direct supervisor, and the person to

---

22 Exhibit D at 68.

23 *See* Exhibit F, Copy of Screen Shot from http://www.va.gov/providerinfo/ALASKA/index.asp. Designating CRNA Bowler as one of "Our Doctors" was still on the website before CRNA Bowler's deposition in June 2012. Apparently, after this was brought to the Government's attention at CRNA Bowler's deposition, the VA removed CRNA Bowler's name from the website.

24 *See* Exhibit D at 75-76.

25 *Id.* at 108-109.

26 *Id.* at 109.

27 *Id.* at 23.

28 *Id.* at 29.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 8 of 34

whom she answers if there is any problem with care she provides.[29] The VA dictates all aspects of CRNA Bowler's care of patients.

There is a VA handbook that is specific to the Ambulatory Surgery Center.[30] CRNA Bowler acknowledged that the detailed requirements in the handbook govern every essential aspect of her day-to-day work as a nurse anesthetist.[31] CRNA Bowler admitted that if she failed to abide by any of these policies governing her day-to-day activities of patient care or documentation, she could be disciplined by the Chief of Surgery or have staff privileges restricted in some way.[32]

CRNA Bowler acknowledged that while she is in the operating room, however, the surgeon has the ultimate authority about what is going on during that surgery.[33] CRNA Bowler admitted that if a surgeon directed her to do something during the surgery, she could express her unwillingness to do it, but the surgeon had

---

29 *Id.* at 70.

30 Exhibit G, Excerpts from VHA Handbook, May 20, 2003.

31 *See* Exhibit D at 104.

32 *Id*. at 103-104.

33 *Id*. at 105.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

the authority to trump her and get another provider into the procedure to do what the doctor wanted done.[34] In this case, Dr. Gates was the surgeon, and Dr. Gates is an employee of the VA.[35]

## III. ARGUMENT

### A. Bowler is an Agent of the Federal Government.

The Government thought of and treated CRNA Bowler as an employee, and therefore an agent of the Government subject to the FTCA, since before the inception of this litigation. Now, the Government claims that CRNA Bowler is not an employee, that she directly caused Mr. Lusk's permanent injury, and that the Government is not responsible for her negligence.[36]

The Ninth Circuit instructs that the summary judgment standard set out in Fed. R. Civ. P. 56(c) governs determinations of agency status under the FTCA, where the jurisdictional and substantive issues are intertwined and resolving the jurisdictional question depends on factual issues impacting the merits. The Court must determine whether there are any genuine

---

34 *Id.* at 106-107.

35 *Id.* at 107.

36 *See* Exhibit C.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

issues of material fact, and apply the undisputed facts to the relevant substantive law.[37]

This Court can find that CRNA Bowler is an agent under the FTCA even if she is nominally called an independent contractor. "Employee of the Government" includes in relevant part, "[p]ersons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. . . ."[38] Thus, an agent, officer or employee of the Government is covered by the FTCA.

However, the FTCA expressly excludes "any contractor with the United States."[39] Where the Government alleges that the "independent contractor" exception to the FTCA applies, it bears the burden of proof.[40] Thus, the Government bears the burden to prove that CRNA Bowler is not an agent/employee of the federal government. Plaintiff seeks a determination that CRNA Bowler is an agent/employee for the purposes of determining culpability

---

37 *Id.*

38 28 U.S.C.A. § 2671.

39 *Id.*

40 *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 11 of 34

under the FTCA, based on undisputed facts and a proper application of the law to those facts.

Agency is a legal question that can only be answered after assessing the facts of the relationship and applying the law of agency to those facts.[41] A party's characterization of the relationship is not controlling.[42] Thus, the Government's recent claim that she was an independent contractor excluded from coverage under the FTCA bears no weight.

In *Autery v. United States,* the Ninth Circuit explained that

> The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor. … [There must be] substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee.[43]

Other factors to consider are 1) whether the employer supplies the tools, 2) whether the employer supplies the equipment and

---

41 RESTATEMENT (THIRD) OF AGENCY § 1.02 cmt. a (2012).

42 *Id.*

43 *Autery v. United States*, 424 F.3d 944, 956 - 57 (9th Cir. 2005) (citations omitted).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

the place of work, 3) the length of time the person is employed, and 4) whether the method of payment is by time or by the job.[44]

Each of these factors supports a finding of agency for CRNA Bowler. The uncontradicted facts show that the VA supplies all of the equipment, materials, and medications CRNA Bowler uses as a nurse anesthetist.[45] She works only at the VA Ambulatory Surgery Center and maintains an office there with her personal belongings.[46] CRNA Bowler has worked for the VA as a nurse anesthetist for nearly 20 years.[47] Finally, CRNA Bowler is paid on a monthly basis, not by job.[48] These facts make it clear that using the factors set out in *Will v. United States* and the *Restatement*, CRNA Bowler was acting as an agent/employee of the Federal Government when she provided the anesthesia care for Mr. Lusk during his shoulder surgery that resulted in his permanent injury subject of this suit.[49]

---

[44] *Will*, 60 F.3d at 659 (9th Cir. 1995)(citing 1 Lester S. Jayson, *Handling of Federal Tort Claims* § 8.04[1], 8-64 to 8-65; Restatement (Second) of Agency § 220(2)).

[45] Exhibit D at 110.

[46] *Id.*

[47] *Id.* at 75-76.

[48] *Id.* at 19.

[49] *Will v. United States*, 60 F.3d 656, 659 (9th Cir. 1995)(citing 1 Lester S. Jayson, *Handling of Federal Tort Claims*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

In *Autery*, the Ninth Circuit found that fire management contractors were not Government employees because the Government did not direct "the actual performance of the contract (e.g., how to fight the fires, or how to disc the soils, or how to conduct a controlled burn)."[50] The parties in *Autery* agreed that that the Government did not supervise or direct the day-to-day operations of the contractor making that person a "de facto Government employee."[51] By contrast, CRNA Bowler was directly supervised by the Chief of Surgery at the VA Ambulatory Surgery Center. In fact, according to the VA Ambulatory Surgery Center Handbook, for a patient like Mr. Lusk with an ASA III classification, the Chief of Surgery, not the nurse anesthetist, was required to develop an anesthesia treatment approach.[52] CRNA Bowler acknowledged that this policy applied to a patient with an ASA Class III and above.[53] She also acknowledged that Mr.

§ 8.04[1], 8-64 to 8-65; Restatement (Second) of Agency § 220(2)).

50 *Autery*, 424 F.3d at 957.

51 *Id*.

52 Exhibit H, Excerpts from VHA Handbook, May 20, 2003.

53 Exhibit D at 90. The ASA physical status classification system assesses a patient's fitness for surgery. A patient is an ASA III when there is a severe systemic disturbance from one or more causes. An ASA III patient is at higher risk for complications. *Id*.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Lusk was an ASA Class III.[54] In other words, on a patient like Mr. Lusk, the Chief of Surgery was driving the care, exerting federal authority to control and supervise the 'detailed physical performance' and 'day to day operations' of the CRNA, as the *Autery* Court cited as a basis to find an agency relationship subjecting the Government to liability under the FTCA upon proof of negligence.[55]

The detailed rules implemented for anesthesia care illustrate that the VA assumed a duty of direct supervision and control over nurse anesthetists. CRNA Bowler admitted that the Chief of Surgery supervised her, and could discipline, restrict or suspend her privileges based on any failure to follow the detailed VA requirements of how she cared for a patient.[56]

In addition to the specific requirements established by the Chief of Surgery, CRNA Bowler was also under the supervision of the surgeon during the surgery. She admitted that the surgeon has the ultimate authority on what happens during the surgery.[57]

---

[54] *Id.* at 91, 93.

[55] *Autery*, 424 F.3d at 957 (citations omitted).

[56] Exhibit D at 91, 93.

[57] *Id.*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Both the Chief of Surgery and Dr. Gates are VA employees, and CRNA Bowler worked under their general and specific direction and control.

However, CRNA Bowler was more than just directly supervised. The VA Ambulatory Surgery Center Handbook detailed how CRNA Bowler performed her job on a day-to-day basis from the moment she met a patient until that patient left her care. That handbook fixed specific and precise requirements about what CRNA Bowler had to do and not do before a surgery. The VA required that CRNA Bowler do a pre-anesthesia evaluation.[58] The VA mandated that "[a] member of the anesthesia care team is responsible for determining the status of the patient, developing a plan of anesthesia care, and acquainting the patient or responsible adult with the proposed plan."[59] The policy then outlined in detail what must be done to develop that plan, including 1) reviewing the medical record, 2) interviewing and examining the patient, 3) obtaining or reviewing tests and consultations necessary to the conduct of anesthesia, and 3)

---

58 *Id.* at 96-97.

59 *Id.* at 97.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

determining the appropriate prescription of pre-operative medications.[60]

The Handbook also specified what CRNA Bowler did during a surgery.[61] CRNA Bowler was required to stay in the operating room throughout the entire procedure, and she had to monitor "oxygenation, ventilation, circulation and temperature" continuously.[62] The VA even gave specific instructions about monitoring body temperature, requiring that it be done continually looking for significant changes in body temperature that are "intended, anticipated or suspected."[63]

Finally, the Handbook dictated how she cared for a patient after the surgery. The VA defined appropriate post anesthesia management requiring that CRNA Bowler transport the patient to the Post Anesthesia Care Unit (PACU), that she continually monitor and treat the patient during transport, that the patient be reevaluated upon arrival at the PACU, and that she provide a verbal report to the responsible PACU nurse.[64] CRNA Bowler

---

60 *Id.* at 98.

61 *Id.* at 99.

62 *Id.*

63 *Id.* at 99-100.

64 *Id.* at 100-101.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

admitted that the VA handbook included a requirement for each aspect of how she cared for a patient from the beginning to the end of her anesthesia care.

The VA not only dictated how CRNA Bowler treated the patient through every step, it also has specific and detailed requirements about documenting the treatment provided at each stage.[65] This is not a general documentation policy, instead it specified exactly seven things that CRNA Bowler must document in the pre-anesthesia evaluation including the patient interview, physical examination, review of diagnostic tests, an ASA physical status rating assignment to the patient, the anesthesia plan, discussing that plan with the patient, and the consent of the patient to go forward.[66] Additionally, CRNA Bowler is required to document seven specific areas during the surgery including the specific time for each documented area.[67] Finally,

---

65 *Id.* at 102-103.

66 Exhibit I, Excerpts from VHA Handbook, March 7, 2007.

67 *Id.* at 2470. The Handbook requires CRNA Bowler to document 1) that she reviewed the preoperative evaluation immediately before initiating anesthesia; 2) monitoring of the patient including recording of vital signs; 3) all drugs and agents used, and the times each is given; 4) the type and amounts of all intravenous fluids used, including blood and blood products and the times each was given; 5) the techniques used; 6) unusual events during anesthesia; and 7) the status of the patient at the conclusion of anesthesia.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

CRNA Bowler is required by the VA to document in detail all of her post-anesthesia care including six more specific areas.[68] CRNA Bowler admitted she is required to document all of these things.[69] As the Ninth Circuit explained in *Autery*, these sort of detailed directives from the VA show control over day to day operations required to establish agency under the FTCA.

The Ninth Circuit has not specifically considered whether a nurse anesthetist is an independent contractor under the FTCA. However, some Circuit Courts have found that certified nurse anesthetists under a contract with the Federal Government are agents for the purposes of the FTCA.[70]

The 10th Circuit, in *Bird v. United States*, explained the differences between nurses and doctors by distinguishing its FTCA holding regarding physicians in the following ways:

---

[68] *Id*. Post-anesthesia documentation must include: 1) patient evaluation on admission and discharge from the PACU; 2) a time based record of vital signs and level of consciousness; 3) all drugs administered, doses, and routes of administration; 4) all intravenous fluids administered; 5) any unusual events or complications; and 6) any post anesthesia visits with the patient. CRNA Bowler is required to first record this information on written forms, and then also required to input some of the information into the VA electronic medical records system for each patient.

[69] Exhibit D at 102-103.

[70] *Bird v. United States*, 949 F.2d 1079, 1088 (10th Cir. 1991); *Bryant v. United States,* 2000 WL 33201357 at 8. (D. Ariz. Jan. 11, 2000).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

1) Doctors are not required by the Army hospital to always see patients there;

2) An independent doctor can refuse to treat a military patient if he wanted to;

3) An independent doctor can see patients at his private office;

4) An independent doctor maintains an off-base office and has exclusive control over his patients records;

5) The Army did not provide the independent doctor office space;

6) The Army did not provide the private doctor secretarial help;

7) The doctor was not regularly scheduled on the hospital duty roster;

8) The Army controlled little about the manner or method used in reaching an end result of treating the patient.[71]

The above cited facts show that CRNA Bowler is very different from an independent contracting physician, considering the factors considered in *Bird*.

Unlike a physician anesthesiologist, under Alaska law CRNA Bowler is ***required*** to collaborate with either the "director of anesthesia" or the "primary physician . . . responsible for the patient's immediate care."[72] In fact, the Alaska Administrative

---

[71] *Bird*, 949 F.2d at 1085.

[72] 12 AAC 44.510(b).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 20 of 34

Code requires a nurse anesthetist applying for a license to identify the anesthesiologist or other doctor with whom they will most frequently collaborate, and submit a "communication plan for collaborating on cases with physicians during the preoperative, perioperative and postoperative periods[.]"[73] Unlike doctors, nurse anesthetists are not given complete discretion over their patients. Under the VA Rules, the anesthetist/physician collaboration is directed by the Chief of Surgery and surgeon in each case. This pattern of subservient care complies with the American Society for Anesthesiologists' Recommended Scope of Practice of Nurse Anesthetists and Anesthesiology Assistants, which recognizes the difference, noting that "[b]ecause nurse anesthetists . . . are not trained to make medical judgments, virtually all states require direct physician participation in care provided by these anesthesia providers. State statutes and regulations specify the requirements for medical direction or supervision of the nurse anesthetists by a physician . . ." [74]

---

[73] 12 AAC 44.500(a)(3)(B)-(C).

[74] *See* Exhibit J, Recommended Scope of Practice of Nurse Anesthetists.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

According to the VA bylaws and CRNA Bowler, the Chief of Surgery does more than just collaborate with her; he is required to directly supervise CRNA Bowler to make sure she is following the specific and detailed requirements of patient care. Further, while the VA surgeon collaborates with CRNA Bowler, he has the ultimate authority about what happens to the patient during the surgery.

Under circumstances not present here, the Ninth Circuit ruled that a contract physician is an independent contractor under the FTCA.[75] *Carrillo* involved a FTCA claim against the Army for a doctor whose pediatric group contracted with the Army base.[76] The Ninth Circuit decided that because the Army did not have "any control over Dr. Ozimek's practice of medicine" in "diagnosing and treating patients," he was not an employee.[77] The only evidence of control exhibited by the Army in *Carrillo* was over Dr. Ozimek's "administrative duties," and "to some extent the hours he would see patients."[78] As discussed above,

---

[75] *Carrillo v. United States*, 5 F.3d 1302, 1305 (9th Cir. 1993).

[76] *Id.* at 1303.

[77] *Id.* at 1305.

[78] *Id.*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

the evidence of the VA's control over CRNA Bowler's treatment of patients is night and day in comparison.

In short, the VA directly supervised and dictated each aspect of CRNA Bowler's care of patients from the moment she met them, until they were released from her care. The Government exercised day-to-day and moment-to-moment control over treatment of patients in CRNA Bowler's care for nearly two decades. The VA held CRNA Bowler as an employee, because she is a de facto employee regardless of her contractual status.

The Government cannot, after the fact, be allowed to dig out a contract and attempt to use it as a shield from liability. This is true, especially after it represented both before this litigation began and to the public on its website that CRNA Bowler was an employee. This impropriety is heightened by the Government's attempt to blame CRNA Bowler for Mr. Lusk's injuries only ***after*** it found this contractual shield and the court allowed it to amend its Answer. The Court should reject the Government's attempt to distance itself from the nurse anesthetist's care in this case and conclude as a matter of law and fact that CRNA Bowler is an agent of the Federal Government for purposes of finding liability under the FTCA.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

**B. The Doctrine of Equitable Estoppel Prohibits the Government from Arguing CRNA Bowler is not an Employee.**

Plaintiff is entitled, based on the facts and law, to a finding that CRNA Bowler is an agent of the federal government. In the unlikely event that the Court concludes otherwise, equity demands that the Government should be estopped from claiming that CRNA Bowler is an independent contractor under the undisputed facts of this case. The Ninth Circuit explains that "where justice and fair play require it," estoppel will be applied against the Government.[79]

Traditional elements of estoppel require showing that (1) the person knew the facts; (2) and knew or should have known that their assertion would be relied upon; (3) the other party must be ignorant of the true facts; and (4) the other party must rely on the former's conduct to his injury.[80] Each traditional element of estoppel is satisfied here. First, the VA held CRNA Bowler out as an employee in the VA Ambulatory Surgery Center. The VA website identified her as an employee, the VA General

---

79 *Watkins v. U.S. Army*, 875 F.2d 699, 706-07 (9th Cir. 1989)(quoting *United States v. Lazy FC Ranch*, 481 F.2d 985, 988-89 (9th Cir. 1973)).

80 *Id.* at 709.

Counsel said she was an employee before the litigation began,[81] and the Government admitted she was an employee in its Answer. Mr. Lusk relied on the Government's misrepresentations to his detriment because he cannot file a lawsuit against CRNA Bowler now because the statute of limitations ran for him to make a direct claim against her.[82]

Before filing the Form 95 Administrative Claim and before the state statute of limitations expired, VA General Counsel told Mr. Lusk's counsel that Dr. Gates, Mr. Hull and CRNA Bowler were federal employees.[83] Similarly, when the VA denied the administrative claim almost an entire year later, it asserted a thorough investigation including "interviews with the VA healthcare providers" and consultation with "independent medical experts" revealed no wrongdoing.[84] Finally, the Government answered the Complaint and admitted that CRNA Bowler was an employee of the Federal Government and denied that her care was negligent. The Government should be estopped from claiming otherwise now.

---

81 *See* Aff. of Counsel [Docket 19].

82 *Id.*

83 *Id.*

84 *See* Exhibit A.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

The VA General Counsel and US Attorney's Office had exclusive access to CRNA Bowler's contracts and they had the affirmative obligation to accurately represent that information and produce it to Mr. Lusk. Additionally, as lawyers they understand the significance of determining this relationship from the start of litigation. Even if this was a misunderstanding, the Government's exclusive control of the information made it impossible for Plaintiff to know otherwise. Mr. Lusk could only ask, and they answered repeatedly that CRNA Bowler was an employee. Under Fed. R. Evid. 801(d)(2) these repeated affirmative admissions that CRNA Bowler was a federal employee are undeniably admissions by a party-opponent.

The VA knew Mr. Lusk would have to rely on those representations in filing and prosecuting his case in federal court against the Government. Mr. Lusk was undeniably ignorant of the true facts, and the Government failed to produce the subsequent contract for the first 3 ½ years. Mr. Lusk relied on the Government's representations to his detriment, because it prohibited him from individually naming CRNA Bowler before the statute of limitations ran in state court. Thus, the Government's conduct easily satisfies the traditional elements for estoppel.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Estoppel against the Government requires proving two additional factors: 1) affirmative misconduct going beyond mere negligence, and 2) the Government's wrongful act will cause a serious injustice and the public's interest will not suffer undue damage by imposition of the liability.[85] Affirmative misconduct requires an affirmative misrepresentation, but it does not require that the Government intended to mislead a party.[86]

Here, the Government actively and affirmatively misled Mr. Lusk about CRNA Bowler's status as an employee. It goes beyond negligence given the length of time, the context of litigation and the repeated forums in which the Government misrepresented CRNA Bowler's employment status. Additionally, the misrepresentations were not made by Government clerks or untrained personnel, but instead by Government lawyers with the full knowledge, training and hyper-awareness that such misrepresentations could and would foreclose Mr. Lusk's legal rights.

Satisfying the second prong of estoppel against the Government, Mr. Lusk relied on the misrepresentations to his

---

85 *Watkins*, 875 F.2d at 707.

86 *Id.*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

detriment. Mr. Lusk did not separately name CRNA Bowler since the VA and Government admitted that she was an employee. Had the VA informed Mr. Lusk's counsel that CRNA Bowler was or even might be an independent contractor, she would have been individually named as a defendant and a state court lawsuit would have been filed.[87] By the time the Government changed its mind about CRNA Bowler's status, the statute of limitations imposed on Mr. Lusk for her conduct individually had long passed.

The affirmative misrepresentation about CRNA Bowler's status causes a serious injustice. If the Government is allowed to foist this late-blame onto CRNA Bowler and also disclaim responsibility for her, Mr. Lusk could be without a remedy against CRNA Bowler. Additionally, Mr. Lusk is forced to switch gears now years into this litigation and disprove the Government's new strategy of blame.

Finally, the public's interest will not suffer undue damage by imposing estoppel. The Federal Government is responsible for medical malpractice that occurs in its hospitals. That is one of the purposes of the FTCA. Applying estoppel here is not an

---

87 See Aff. of Counsel [Docket 19].

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 28 of 34

undue impact to the public interest because this type of compensation is contemplated by statute. In fact, the public interest is served in blocking the Government's attempt to duck responsibility.

In *Carrillo v. United States*, the Ninth Circuit also considered an estoppel claim after finding the doctor was an independent contractor.[88] The court rejected the claim because the patient signed a consent form that stated the doctor was a civilian.[89] In contrast, Mr. Lusk signed a specific anesthesia consent form that ***did not reveal*** that CRNA Bowler was 1) a nurse anesthetist not a doctor or 2) an independent contractor/civilian.[90] Additionally, in *Carrillo*, there was no evidence that the Government actively misled the plaintiff about the doctor's status for 3 ½ years ***before and during the litigation***.

The Government should be bound to its affirmative misrepresentation that CRNA Bowler was a VA employee. It should be estopped from disclaiming responsibility for her care because

---

88 *Carrillo*, 5 F.3d at 1306.

89 *Id.*

90 Exhibit K, Anesthesia Consent. In fact, the consent identifies "Foley, Susan J Crna (Anesthesiologist)." CRNA Foley is not an anesthesiologist.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

it knew Plaintiff would rely on its representations regarding her status to his detriment.

### C. **Alaska Law of Apparent Agency in the Hospital Context Controls this Case.**

The Alaska Supreme Court recognized apparent authority or agency in *Jackson v. Power*, which focused on the hospital's actions of holding out an emergency room doctor as an employee and the reasonable patient's expectations in the hospital.[91] *Jackson* is controlling here since the Court must apply the state law in determining the extent of FTCA liability.[92]

Mr. Lusk believed the VA Ambulatory Surgery Center to be a full service hospital. He was not told CRNA Bowler was an independent contractor. As discussed at length above, the VA undeniably held CRNA Bowler out to be an employee of the VA in

---

91 743 P.2d 1376, 1381 (Alaska 1987). The Alaska Legislature passed AS 09.65.096, which only absolves hospitals of liability for emergency room physicians who are contractors when the hospital posts a notice to patients that the physicians in the emergency room are independent contractors and not employees. The notice must be at least "two feet high and two feet wide, with print at least two inches high," and another notice must be published annually in the local newspaper. Obviously, no such notice is provided by the VA. Additionally, the statute only specifically applies to emergency room doctors. Subsequent cases suggest *Jackson* is good law and may apply to providers within the hospital who are not emergency room doctors. *See Fletcher v. South Peninsula Hospital*, 71 P.3d 833, 840-41 (Alaska 2003).

92 *Molzof v. United States*, 502 U.S. 301, 305 (1992).

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

every discernible way. Additionally, like emergency room doctors, patients cannot and do not chose their anesthesiologists, nor do anesthesiologists see patients outside of the surgery setting. *Jackson's* recognition of apparent agency for the purposes of equitable estoppel should apply here.

Using a similar analysis, federal district courts have applied estoppel to prevent the Government from using the FTCA independent contractor exception to "insulate itself by contractual arrangement from liability for acts of medical malpractice committed by an anesthesiologist in a VA hospital."[93] In *Gamble v. United States*, the court avoided the control test under the FTCA and instead found the VA was responsible for negligence of an anesthesiologist because of estoppel.[94] The court found "agency by estoppel is established by creating an effect – the appearance that the hospital agents, not independent contractors, will provide medical care to those who enter the hospital."[95]

---

93 *Gamble v. United States*, 648 F.Supp. 438, 441 (N.D. Ohio 1986); *Utterback v. United States*, 668 F.Supp. 602, 607 (W.D. Kentucky 1987).

94 *Gamble*, 648 F.Supp. at 441. It is worth noting that in *Gamble*, the anesthesiologist was a doctor, not a nurse anesthetist.

95 *Id.*

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

The court recognized that patients do not normally chose their anesthesiologist, nor are they told the provider is an independent contractor, so patients rely on the VA to provide the service.[96] The court also found that sound public policy "demands that the United States not be permitted to contractually insulate itself from liability for acts of medical malpractice committed in government hospitals."[97]

Mr. Lusk has a permanent injury that makes his hands unusable. The Government now admits this was caused during his surgery at the VA Ambulatory Surgery Center. It is wrong to deny Mr. Lusk compensation for his many life care needs resulting from the injury during surgery. Both state and federal law support finding hospital liability when the hospital holds out health care providers as employees.

## IV. CONCLUSION

At the time that Mr. Lusk underwent his shoulder surgery by Dr. Gates that resulted in his permanent injury under CRNA Bowler's anesthesia care, the undisputed facts show that she was an agent of the VA. It directly supervised her and dictated her

---

[96] *Id.*

[97] *Id.* at 441-42.

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Case 3:10-cv-00204-RRB Document 40 Filed 10/24/12 Page 32 of 34

day to day and moment to moment treatment of patients under her care. The VA told CRNA Bowler what to wear, when to show up, it scheduled her patients, it provided her with an office, it required her to specifically document each aspect of her care within the VA record keeping system, and it could discipline or revoke her privileges for any transgression. This satisfies the control test under the FTCA law.

Further, given the Government's affirmative misrepresentation of CRNA Bowler's employee status in this litigation, and to the patients at the VA, it should be equitably estopped from using a contract to shield itself from liability. It is respectfully requested that the Court grant partial summary judgment on the issue of CRNA Bowler's status as an agent of the Federal Government.

DATED this 24th day of October 2012, at Anchorage, Alaska.

DILLON & FINDLEY, P.C.
Attorneys for Plaintiff

By: s/Mauri Long
Mauri Long, ABA No. 9001001
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: 277-5400
Fax: 277-9896
Email: mauri@dillonfindley.com

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2012 a copy of the foregoing Plaintiff's Motion and Memorandum for Partial Summary Judgment was served electronically on E. Bryan Wilson.

s/Mauri Long

LAW OFFICES
DILLON & FINDLEY
A PROFESSIONAL CORPORATION
1049 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
TEL. (907) 277-5400 · FAX (907) 277-9896

Harry Curtis Lusk v. USA
Case No. 3:10-cv-00204-RRB
PLAINTIFF'S MOTION AND MEMORANDUM FOR PARTIAL SUMMARY JUDGMENT
Page 34 of 34