KAREN L. LOEFFLER
United States Attorney

E. BRYAN WILSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
Bryan.Wilson@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| HARRY CURTIS LUSK, | ) | Case No. 3:10-cv-00204-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **UNITED STATES' CROSS-** |
| | ) | **MOTION FOR PARTIAL** |
| UNITED STATES OF AMERICA, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the UNITED STATES OF AMERICA and files its Cross-

Motion for Summary Judgment and in support thereof states as follows:

## INTRODUCTION

Both parties seek partial summary judgment on the issue of whether Certified Registered Nurse Anesthetist (CRNA) Brenda Bowler is an independent contractor of the United States Veteran's Affairs (VA) Clinic in Anchorage, Alaska, and whether the United States bears any liability for her actions.

## FACTS

### A)    *Care of Mr. Lusk*

On April 17, 2007, Mr. Lusk underwent outpatient rotator cuff surgery on his left shoulder at the Veteran's Affairs (VA) Clinic in Anchorage, Alaska. Doc. 1. There were three providers who were primarily responsible for Mr. Lusk during the surgery: VA employee Dr. George Gates, M.D., the physician performing the surgery; VA employee Physician's Assistant (PA) Ben Hull, Dr. Gates' physician's assistant; and independent contractor Certified Registered Nurse Anesthetist (CRNA) Brenda Bowler, the anesthetist. *Id.* The surgery appeared to go well and Mr. Lusk was released from the clinic that day. *Id.* The next day, however, Mr. Lusk began to have swelling in his hands and ultimately lost use of his hands from the wrist down. *Id.*

Lusk v. U.S.    -2-
Case No. 3:10-cv-00204-RRB

### B) Relationship Between CRNA Bowler and the VA

CRNA Bowler has been an anesthetist since 1978. Bowler depo., Ex. A, p. 5. She has provided anesthesia services at the VA Clinic in Anchorage, Alaska since the mid-1990's. Bowler depo., Ex. A, p. 8. During the 1990's, she provided anesthesia services to the VA as a sole proprietorship under the name Alaska Anesthesia Services. Bowler depo., Ex. A, p. 9, 80-84.

In 2005, CRNA Bowler began working for Susan Foley, another CRNA operating under the name Anesthesia West. Bowler depo., Ex. A, p. 13-14. The two entered into a contract with the VA. *Id.*; 2005 VA contract Ex. B. The contract was a nonpersonal services standard government contract Form 1449. *Id.* The contract required Anesthesia West to "provide Anesthesiologist or CRNA services at the VA…." 2005 VA contract, Ex. B, p. 6 of 39.[1] The contract stated that "The services to be performed by the contractor will be performed in accordance with VA policies and procedures and the regulations of the medical staff by laws of the VA facility" and "The services to be performed by the contractor will be under the direction of the Chief of Staff, and the Chief of Staff, Assistant." 2005 VA contract, Ex. B, p. 4 of 39.

---

[1] See also "**2.5 Statement of Work**" for a more detailed description of the services Anesthesia West was to provide. 2005 VA contract, Ex. B, p. 9 of 39.

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 3 of 28

In two separate sections, the contract further provided that Anesthesia West was responsible for procuring and paying for: workers compensation insurance; professional liability insurance; health examinations; income tax withholding; social security payments and malpractice insurance for all of its employees. 2005 VA contract, Ex. B, p. 5 of 39, p. 10 of 39. The contract specifically provided "The parties agree that the contractor, its employees, agents and subcontractors shall not be considered VA employees for any purpose." *Id.*

The contract was non-exclusive and allowed either the VA or Anesthesia West to contract with other health care providers or purchasers of health care services. 2005 VA contract, Ex. B, p. 6 of 39.

In order to get paid, Anesthesia West was required to submit invoices to the VA. 2005 VA contract, Ex. B, p, 11- 12 of 39; Bowler depo., Ex. A p. 126-27. The VA was allowed to terminate the contract at any time for the Government's convenience or for cause. 2005 VA contract, Ex. B, p. 13 of 39. Anesthesia West was required to comply with a long list of federal statutes and federal acquisition regulations and allow the Government, upon reasonable notice, to audit its books. 2005 VA contract, Ex. B, p. 14-18 of 39. The contract further provided:

> It is expressly agreed and understood that this is a nonpersonal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101, under

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 4 of 28

which the professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor. The Government may evaluate the quality of professional and administrative services provided but retains no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments. The Contractor and its health-care providers shall be liable for their liability-producing acts or omissions.

> 2005 VA contract, Ex. B, p. 20 of 39.

The contract was renewed annually through the time period at issue in this case. Bowler depo., Ex. A, p. 71-73.

Under this contract, CRNA Bowler 1) was a subcontractor to Susan Foley and Anesthesia West; 2) was paid by Anesthesia West; 3) was annually given IRS Form 1099s by Anesthesia West; 4) had her vacation schedules set by Anesthesia West; 5) had her surgery coverage set by Anesthesia West; 6) carried her own medical malpractice insurance; 7) withheld her own Social Security taxes; 8) did not receive any payment from the VA for her services; 9) maintained a similar contract, without getting permission from the VA, with the Yukon Kuskokwim Health Corporation to deliver anesthesia services to the hospital in Bethel, Alaska; 10) never received a performance review from the VA; and 11) determined with Susan Foley who would cover what days at the VA without input from the VA.

Lusk v. U.S.   -5-
Case No. 3:10-cv-00204-RRB

Bowler depo., p. 14-20, 38-39, 71-72, 84-85, 112-13, 125-25.

For VA surgical patients under her care, CRNA Bowler will typically collaborate with the surgeon on the method of delivery of anesthesia (spinal, general, etc.) that is appropriate for the operation. Bowler depo., Ex. A, p. 23-28. However, CRNA Bowler can refuse to participate in a surgery if, in her professional judgment, the method preferred by the surgeon is not proper for the surgery. *Id.*, p. 25. Once the method of delivery is determined, CRNA Bowler generally does not confer with the surgeon regarding the particular type of anesthesia to be administered. *Id.*, p. 26-28. No one assists CRNA Bowler in preparing to administer the anesthesia. *Id.*, p. 30-31. Prior to each surgical day, CRNA Bowler independently checks the anesthesia equipment (which is provided by the VA) to be sure it is functioning properly. *Id.*, p. 45-46, 109-10. During surgery, CRNA Bowler is solely responsible for using her professional judgment to monitor all vital signs of the patient and make adjustments as necessary. *Id.*, p. 30-34, 56-57, 62-63, 116-18, 135-36. If a patient's vital signs begin to deteriorate during the surgery, CRNA Bowler is ultimately responsible for the decision to stop the surgery. *Id.*, p. 33-34, 105-06, 128-29, 137. After surgery, CRNA Bowler checks the patient's airway and ensures that he is breathing on his own

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 6 of 28

before releasing him to the VA post-op staff.  *Id.*, p. 58-59.

Throughout her time providing anesthesia services for surgeries at the VA, CRNA Bowler always considered herself to be an independent contractor, not an employee.  *Id.*, p. 74, 78-79.

## **ARGUMENT**

## **I.  CRNA BOWLER IS AN INDEPENDENT CONTRACTOR**

Plaintiff wisely seeks to avoid the plethora of cases holding that physicians similarly situated to CRNA Bowler are independent contractors by attempting to distinguish between the roles of a nurse anesthetist and a physician anesthesiologist.  Doc. 40, p. 19-20.  However, as discussed below, in Alaska (and several other states) nurse anesthetists operate independently of physician supervision and are therefore analyzed in the same manner as physicians to determine their independent contractor status.

### *A)      Generally*

The FTCA, 28 U.S.C.  §1346(b), provides:

> (T)he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or death caused by the *negligent or wrongful act or omission of any employee* of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act

Lusk v. U.S.    -7-
Case No. 3:10-cv-00204-RRB

or omission occurred. (emphasis added).

Because the waiver of sovereign immunity is limited to liability for negligent acts or omissions of its employees, the United States remains immune from liability if a plaintiff cannot show fault on the part of an employee of the United States. *Dalehite v. United States*, 346 U.S. 15, 44-45 (1953) ("the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance"); *Laird v. Nelms*, 406 U.S. 797, 799 (1972). Similarly, the United States cannot be held vicariously liable for the negligence of an independent contractor, since one of its own employees has not committed a negligent act or omission. *United States v. Orleans*, 425 U.S. 807, 813-14 (1976); *Logue v. United States*, 412 U.S. 521, 526 (1973).

Under the FTCA, federal courts must apply federal law in determining whether an individual is a federal employee. *Brandes v. United States*, 783 F.2d 895, 896 (9th Cir.1986). "Congress ... could have left the determination as to whose negligence the Government should be liable for under the [FTCA] to the law of the State involved, ... [b]ut it chose not to do this, and instead incorporated ... the exemption from liability for injury caused by employees of a contractor."

*Logue*, 412 U.S. at 528.  Courts are not free to "abrogate the exemption" for the negligent acts of contractors regardless of whether there is a good reason for so doing.  *Id.*

The Supreme Court developed the "strict control" test to distinguish between employees and independent contractors.  *See Logue,* 412 U.S. at 527 (federal funding of a local community program); *Orleans*, 425 U.S. at 814 (use of county jails for federal prisoners). Under that test, an individual's status as either employee or independent contractor "depends upon the amount of governmental agency control of the physical performance of the [individual's] day-to-day activities." *Logue*, 412 U.S. at 527-28;  *Orleans*, 425 U.S. at 815.  "The critical test for distinguishing an agent from a contractor is the existence of federal authority to control and supervise the detailed physical performance and day to day operations of the contractor", not whether the contractor must comply with federal standards and regulations.  *Carillo v. United States*, 5 F.3d 1302, 1304 (9th Cir.1993) (quotations and citations omitted).

Courts have held that physicians under contract to provide medical services at facilities operated by the federal government are not federal employees under the FTCA.  *See Carillo*, 5 F.3d at 1305 (contract pediatrician at Army medical

center); *Leone v. United States*, 910 F.2d 46, 50 (2nd Cir.1990) (FAA medical examiners independent contractors even though "FAA provides the AMEs with detailed guidelines for conducting medical exams and requires the use of specific equipment and examination techniques. The FAA regulations also set forth the medical standards the AMEs must apply in assessing each applicant for certification. Further, each AME acts under the Federal Air Surgeon's general supervision . . . and the FAA continuously evaluates the AMEs."; *Lilly v. Fieldstone*, 876 F.2d 857, 859-60 (10th Cir.1989) (civilian physician contracted as consultant to perform emergency surgery at Army hospital and billed Army for services); *Bernie v. United States*, 712 F.2d 1271, 1273 (8th Cir.1983) (contract physician with Indian Health Services – services provided based upon fee schedule); *Wood v. Standard Products Co., Inc*., 671 F.2d 825, 831-32 (4th Cir.1982) (contract physician with United States Public Health Service – real test to determine employment status is "control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." ). These cases relied on the need and ethical obligation of physicians to base their treatment decisions on independent judgment, which cannot be controlled by the government. *Ezekiel v. Michael*, 66 F.3d 894, 902 (7th Cir. 1995).

Lusk v. U.S.    -10-
Case No. 3:10-cv-00204-RRB

As discussed below, CRNAs in Alaska exercise the same degree of independent professional judgment as physicians and are therefore analogous to physicians for purposes of this motion.

### B)    Alaska's Regulation of CRNAs

In Alaska, CRNAs do not work under the supervision of a surgeon or other physician in a traditional doctor/nurse relationship.  CRNAs licensed by the State of Alaska work independently and in collaboration with the surgeon, providing their own expertise to provide comprehensive care to the patient.

12 Alaska Administrative Code 44.510 provides:

12 AAC 44.510. SCOPE OF PRACTICE. (a) To ensure available nurse anesthesia to the Alaska public in accordance with the standards set forth by the national certifying board for nurse anesthetists, a registered nurse anesthetist in Alaska is authorized within the scope of his or her educational preparation to perform procedures outlined by the American Association Nurse Anesthetist Guidelines for the Practice of the Certified Registered Nurse Anesthetist.

(b) A registered nurse anesthetist is authorized to administer anesthesia
(1) in collaboration with the director of the anesthesia service or a qualified designee of the director; or
(2) in collaboration with the primary physician or qualified physician designee of the primary physician or of the dentist responsible for the patient's immediate care.

(c) In this section, "collaboration" means a process which involves two or more parties working together, each contributing his or her respective area of expertise to provide more comprehensive care than one alone can offer.

In order to fully explain the independent stature of the CRNA in Alaska, a short digression must be made into federal Medicare law.  Under federal regulations, in order for a hospital or ambulatory surgical center to receive reimbursement from Medicare when a CRNA administers anesthesia, the CRNA must ordinarily be supervised by a physician.  42 C.F.R. §§ 482.52(a)(4), 416.42(b)(2), 485.639(c)(2).  However, regulations promulgated during the Clinton Administration allow a state's governor to opt out of the physician supervision requirement after concluding, among other things, opting out is "consistent with State law." 42 C.F.R. §§ 482.52(c)(1), 416.42(c)(1), 485.639(e)(1).

In 2003, then Governor Frank Murkowski opted the State of Alaska out of the physician supervision requirement.  See Murkowski letter, Ex. C.  In that letter, Governor Murkowski noted that that the opt out was consistent with Alaska state law in that "[i]t has been the public policy of the State of Alaska to permit advanced registered Nurse Practitioners including CRNAs to practice *independently of physician supervision*.  As such, under Alaska law, CRNAs are authorized to administer anesthesia *without physician supervision*." *Id.* (emphasis added).  Thus, a CRNA in Alaska works as an independent, co-equal of the

Lusk v. U.S.    -12-
Case No. 3:10-cv-00204-RRB

physician and is therefore analogous to the physicians in the cases cited elsewhere in this motion.

Plaintiff's citation to the American Society for Anesthesiologists' guidelines (Doc. 40, p. 21) highlights a long-running dispute between anesthesiologists and nurse anesthetists regarding physician *supervision* and physician *collaboration*. Like Alaska, several other states have opted out of the physician supervision requirement and have faced lawsuits by anesthesiologists challenging the decision. *See e.g., California Society of Anesthesiologists et al., v. Brown,* 204 Cal.App.4th 390, 138 Cal.Rptr.3d 745 (Cal. App. 1st Dist. 2012*); Colorado Medical Society v. Hickenlooper*, __ P.3d __, 2012 WL 2928528 (Colo.App. 2012). In those cases, physicians argued that both California and Colorado law required supervision of a CRNA by a physician. 204 Cal.App.4th at 398, 138 Cal.Rptr.3d at 749; 2012 WL 2928528, *6. In both cases, courts held that state law permitted CRNAs to work independently of the physician. 204 Cal.App.4th at 408, 138 Cal.Rptr.3d at 757; 2012 WL 2928528, *9.

In *Colorado Medical Society*, the decision to opt out was reviewed in light of a Colorado regulation similar to that of Alaska's - requiring the CRNA to maintain a "mechanism for consultation or collaboration" with a physician. 2012

WL 2928528 at *6. Colorado physicians argued that this language, coupled with the requirement that the physician order the anesthesia, allowed a CRNA to administer anesthesia only under a physician's supervision. *Id.* The court, however, distinguished between "collaboration" and "supervision" finding that reading the terms as identical would render the law "superfluous." *Id.* at *7. Even more compelling was the court's response to the physicians' argument that the surgeon was "captain of the ship" and therefore vicariously liable for the acts of anyone in the operating room. *Id.* at *8. The court held that "if CRNAs are not supervised by the Doctors, injured patients will need to seek redress from the CRNAs who were present in the operating room" and that under this scheme, CRNAs would have to carry their own liability insurance. *Id.* at *8-9.[2]

Thus, Alaska regulations governing CRNAs clearly require the CRNA to exercise independent professional judgment in the administration of anesthesia. The fact that they are required to collaborate with a surgeon (as an anesthesiologist would do) does not affect their status as an independent equal in the operating room.[3] *See Bragg v. United States*, 810 F.Supp. 2d 1307, 1318 (N.D. Fla. 2011)

---

[2] *Quintana v. United States*, 2008 WL 731115, *5 (D. Colo. 2008) provides a good model for comparison. There an LPN was held to be an employee of the United States because, among other things, Colorado law required nurses to be *supervised* by another health care provider.

[3] Plaintiff's cite *Bird v. United States*, 949 F.2d 1079 (10th Cir. 1991) in their argument that a CRNA is not an independent contractor under the FTCA. Doc. 40, p. 19. While *Bird* will be discussed in more detail below, it is

("collaborative work described by [physician's assistant], which involved

consulting active-duty Navy specialists for particular treatment decisions, does not

give rise to control sufficient to yield an employer-employee relationship.");

*Matos v. Midstate Medical Center*, 2011 WL 782833, *5 (Conn. App. 2011)

("Like an anesthesiologist, a CRNA can independently administer anesthesia."

interpreting Connecticut statute requiring CRNA "collaboration" with physician).

## C) *Nonpersonal Services Provided Under FAR 37.101*

CRNA Bowler, through Anesthesia West, contracted with the VA pursuant

to a nonpersonal services contract which referenced section 37.101 of chapter 48

of the Federal Acquisition Regulations (FAR). 48 FAR 37.101(f) defines a

nonpersonal services contract as:

> Nonpersonal services contract means a contract under which the personnel
> rendering the services are not subject, either by the contract's terms or by the
> manner of its administration, to the supervision and control usually
> prevailing in relationships between the Government and its employees.

48 FAR 37.401 further refines the scope of a nonpersonal health care

provider contract:

> Agencies may enter into nonpersonal health care services contracts

---

important to note here that, unlike Alaska, the administrative scheme in Oklahoma specifically requires CRNAs to be *supervised* by physicians. Okla. Admin. Code 310:667-25-2 ("If anesthetics are not administered by a qualified anesthesiologist, they shall be administered by . . . a certified registered nurse anesthetist under the supervision of the operating surgeon.)

Lusk v. U.S.   -15-
Case No. 3:10-cv-00204-RRB

with physicians, dentists and other health care providers under authority of 10 U.S.C. 2304 and 41 U.S.C. 253. Each contract shall--

(a) State that the contract is a nonpersonal health care services contract, as defined in 37.101, **_under which the contractor is an independent contractor_**;

(b) State that the Government may evaluate the quality of professional and administrative services provided, but retains no control over the medical, professional aspects of services rendered (e.g., professional judgments, diagnosis for specific medical treatment);

(c) Require that the contractor indemnify the Government for any liability producing act or omission by the contractor, its employees and agents occurring during contract performance;

(d) Require that the contractor maintain medical liability insurance, in a coverage amount acceptable to the contracting officer, which is not less than the amount normally prevailing within the local community for the medical specialty concerned; and

(e) State that the contractor is required to ensure that its subcontracts for provisions of health care services, contain the requirements of the clause at 52.237–7, including the maintenance of medical liability insurance. (emphasis added).

Courts have routinely held that health care providers contracting with a government agency under 48 FAR 37.101 are independent contractors. *Bragg v. United States*, 810 F.Supp.2d 1307, 1315 (N.D. Fla. 2011) (non-personal services contract "provides persuasive support for the Government's argument that [doctor and physician's assistant] were not government employees during the relevant

time period."); *Gineman v. United States,* 2009 WL 3497795, *2 (E.D. Mich. 2009) (orthopedic specialists at VA Medical Center); *Peacock v. United States*, 2008 WL 5377819, *5 (E.D. La. 2008) (FAR provision in contract "carries the most weight in favor of independent contractor status"); *Waconda v. United States*, 2007 WL 2219472, *11-12 (D. N.M. 2007) (ER physician at IHS native hospital) (citing cases).

Most telling *is Grace v. U.S.*, 754 F.Supp.2d 585 (W.D. N.Y. 2010). There, the Rochester, NY VA clinic and the University of Rochester (UR) entered into a nonpersonal services contract under FAR 37.101 to provide the VA with ophthalmologists. 754 F.Supp.2d at 587-88. Plaintiff sued the United States under the FTCA, claiming that an ophthalmologist at the VA improperly treated his eye condition. *Id.* The United States defended claiming that it was not liable for any negligence of the UR ophthalmologist because he was an independent contractor. *Id.* at 592.

The court found that the ophthalmologist was an independent contractor in spite of the fact that the VA/UR contract allowed the VA to: 1) evaluate the quality of professional and administrative services provided under the contract; 2) set the number of days per month services would be provided; 3) set the work

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 17 of 28

hours for the ophthalmologist; 4) require use of the VA's medical records system and forms; 5) require adherence to the VA's customer service standards; 6) require adherence to VA guidelines, policies and procedures; 7) require the ophthalmologist follow medical staff bylaws; 8) review the qualifications personnel provided by UR; 9) determine the number of patients the ophthalmologist would see; 10) use VA clerical staff to schedule ophthalmologist appointments; 11) determine the individual ophthalmologist's work schedule; and 12) require the ophthalmologist to see any VA patients who needed ophthalmology services. *Id.* at 589-90. The court further noted that the VA did not have an ophthalmologist on staff to supervise the UR doctors, expected the ophthalmologists to exercise their own independent judgment, did not set the ophthalmologist's vacation schedule, and did not provide any salary or benefits to the ophthalmologists. *Id.*

The facts of *Grace* are very similar to those here. The VA's contract was with Anesthesia West, not CRNA Bowler. Anesthesia West was the employer of CRNA Bowler and, like the VA in *Grace*, CRNA Bowler was expected to comply with VA policies and procedures, but the VA had no nurse anesthetist or anesthesiologist to supervise anyone from Anesthesia West in the administration

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 18 of 28

of anesthesia. Bowler depo., Ex. A, p. 26-31. The contract language should be given great weight in determining that CRNA Bowler is an independent contractor.

### D) Federal Case Law - Health Care Providers as Independent Contractors

Circuit courts "have consistently held that physicians either in private practice or associated with an organization under contract to provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes." *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996) (citing cases).

In *Carrillo v. United States,* 5 F.3d 1302 (9th Cir. 1993) the Ninth Circuit noted "[t]he circuit courts are unanimous in holding that a contract physician is not an employee of the government under the FTCA." *Id.* at 1304. In examining the various cases, the Ninth Circuit noted the reasoning behind the cases: even though the contract physician "was subject to the same rules, regulations and hospital control" as were Army physicians, "[t]he Army controlled little about the end result or the manner and the method of reaching a result. Clearly, the end result (i.e. the outcome of surgery) was beyond the Army's control." *Id., citing Lilly v.*

*Fieldstone*, 876 F.2d 857 (10th Cir.1989); *see also, Sneed v. United States*, 29 F.3d 634, *2 (9th Cir. 1994)(radiologist ruled independent contractor even though he maintained an office at Navy hospital, had his schedule set by hospital, and followed general directions of hospital's head of radiology); *Lewis v. United States*, 1998 WL 544969, *3 (N.D. Calif. 1998) (surgeon at Navy hospital independent contractor even though hospital set surgeon's hours, scheduled all patients and had certain disciplinary powers over him).

CRNA Bowler worked under a very similar arrangement as the independent contractor pediatrician in *Carillo*: the VA provided the "facilities, ancillary support, and therapeutic services, and equipment and supplies;" the VA regulated the hours she would see patients; but she was employed by another company, which contracted directly with the VA and provided her malpractice insurance. 5 F.3d at 1303-05.

The District of Alaska has likewise followed *Carillo* in holding that a neurosurgeon who was employed by a physician staffing service and worked at Anchorage Native Medical Center (ANMC) was an independent contractor. *Wolcoff v. United States*, 2010 WL 3210695 (D. Alaska 2010) (J. Sedwick). In *Wolcoff*, plaintiff claimed that back surgery performed at ANMC was done in a

negligent manner. *Id.* at *1. The doctor who performed the surgery was employed by Vista Staffing Solutions, a physician supply service. *Id.* After filing an FTCA suit against the United States, plaintiffs sought to add the surgeon as a party, even though it appeared the statute of limitations had run on any claim against the doctor. *Id.* at *2. Plaintiff claimed the doctor was an employee of ANMC and the surgeon and United States argued she was an independent contractor. *Id.*

Judge Sedwick held that the surgeon was an independent contractor, in spite of plaintiffs showing that: 1) the surgeon applied to "join the Medical Staff at the Alaska Native Medical Center;" 2) other items in her application packet referred to her "employment" with ANMC; 3) Vista only acted as a payroll servicing entity; and 4) certain forms filled out in the course of her tenure at ANMC indicated that she was an "employee." *Id.* at *1-2. The court found that the surgeon was an independent contractor because ANMC did not exercise control over the surgeon's work and that Vista paid and insured the surgeon. *Id.* at *3. After the case was reassigned to Judge Gleason, the court held that the United States could not be held vicariously liable for the acts of the independent contractor surgeon, even if Alaska state law was to the contrary. *Wolcoff v. United States*, 2012 WL 3838279, *2-3 (D. Alaska 2012) (J. Gleason).

Case 3:10-cv-00204-RRB   Document 47   Filed 11/20/12   Page 21 of 28

Cases in other circuits are completely consistent with the decisions in this district and the Ninth Circuit. *See Robb v. United States*, 80 F.3d 884 (4th Cir. 1996) (radiologist who contracted with Air Force hospital and a radiologist he employed); *Linkous v. United States*, 142 F.3d 271, 275-78 (5th Cir.1998) (obstetrician under contract to CHAMPUS); *Broussard v. United States*, 989 F.2d 171, 175-76 (5th Cir.1993) (ER physician); *Lurch v. United States*, 719 F.2d 333, 337-38 (10th Cir.1983) (surgeon contracted to perform surgery at VA hospital) .

Mr. Lusk cites *Bird v. United States*, 949 F.2d 1079 (10th Cir. 1991) in support of his argument that CRNA Bowler is an employee, not an independent contractor. Doc. 40, p. 19-21. However, *Bird* has been previously distinguished in *Garcia v. Reed*, 227 F.Supp.2d 1183 (D. N.M. 2002), an FTCA case with facts similar to those present in the instant case. In *Garcia*, as here, the issue was the conduct of a CRNA who administered anesthesia to a patient who suffered trauma as a result. *Id.* at 1186. The CRNA worked for a company which had contracted to provide anesthesia services to an IHS hospital under a contract with IHS which specified that the CRNA was an independent contractor. *Id.* at 1191. The CRNA was responsible for paying her own taxes and disability, unemployment and malpractice insurance. *Id.* The CRNA was required to follow the hospital's

Lusk v. U.S.   -22-
Case No. 3:10-cv-00204-RRB

bylaws, policies and procedures. *Id.* The CRNA used the hospital's equipment and her attire and hours did not differ from those of other hospital employees. *Id.* at 1192. Unlike here, the contract also provided that the CRNA would be "under the overall technical direction of the surgeon or obstetrician responsible for the patient's care." *Id.* at 1184.

The *Garcia* court distinguished *Bird* by noting that in *Bird*, the anesthetist did not have a contract which specified that he was an independent contractor, nor was there any evidence that he paid his own taxes and insurance. *Id.* at 1193. In addition, the *Garcia* court noted that Oklahoma law (which governed *Bird*) provided that the CRNA worked "under the supervision" of the physician, as opposed to New Mexico law, which, like Alaska, merely requires a CRNA to "collaborate" with the physician. *Id.* at 1194; *see also Tsosie v. United States*, 452 F.3d 1161, 1163 (10th Cir. 2006) (distinguishing *Bird* on issue of supervision and contract provisions).

Thus, for the reasons stated in *Garcia*, this Court should not follow *Bird*, but instead find CRNA Bowler to be an independent contractor.

### E)    *VA Policies do not Create Employer/Employee Relationship*

Mr. Lusk cites to "detailed" VA policies governing the delivery of

anesthesia services as proof that CRNA was more like a VA employee than an

independent contractor.  Doc. 40, p. 15-19.  These policies, however, prove just

the opposite – that CRNAs are treated on an equal footing with physicians

exercising their independent medical judgment in the treatment of patients.[4]

First, the policies referenced are policies applicable to all VA facilities.  The

VA may require health care providers to adhere to these requirements without

jeopardizing their status as independent contractors.  *Bethel v. United States*, 456

Fed.Appx. 771, 780-81 (10th Cir. 2012) (anesthesiologist "was required by the

contract between the [VA and his employer] to be credentialed and privileged

according to VA policies. Such requirements, however, do not defeat independent

contractor status . . . . The VAMC Bylaws cannot waive the federal government's

sovereign immunity.");  *Creel v. United States*, 598 F.3d 210, 214 (5th Cir. 2010)

(requirement that surgeon follow VA rules and procedures and be supervised by

VA Chief of Staff did not defeat independent contractor status); *Peacock v. United

States*, 597 F.3d 654, 659 (5th Cir. 2010) (cardiologist an independent contractor

even though VA provided support staff, nursing staff, examination rooms, and

medical supplies); *Knudsen v. United States*,  254 F.3d 747, 751 (8th Cir 2001)

---

[4] In his motion, Mr. Lusk attaches only a portion of the applicable VA policies and procedures.  For the sake of
completeness, these cited policies and procedures are attached to this motion in their entirely.  The VA Handbook

Lusk v. U.S.   -24-
Case No. 3:10-cv-00204-RRB

("we are unconvinced that Congress intended to transform independent contractors into employees merely because it expected the VA to insure that quality work was done with government funds"); *Lurch v. United States*, 719 F.2d 333, 338 n. 9 (10th Cir. 1983) (requiring conformance to VA rules and regulations insufficient to make physician an employee); *Via v. United States*, 2012 WL 694761, *4, 8 (S.D. Miss. 2012) (nurse and physician independent contractors even though contract required them to comply with VA policies and procedures); *Grace v. United States,* 754 F.Supp.2d 585, 589 (W.D. N.Y. 2010) (discussed above); *Peacock v. United States*, 2008 WL 5377819, *5 (E.D. La. 2008) (cited above - compliance with federal regulations and standards does not create an employment relationship); *Gibbons v. Fronton*, 533 F.Supp.2d 449, 454 (S.D. N.Y. 2008) ("VA's establishment of clinical guidelines, policies regarding delivery of services, and procedures to review patient satisfaction" does create employment relationship); *Rice ex rel. Casto v. United States*, 2004 WL 3410262, *1 (N.D. Fla. 2004) (VA requirement that "physicians provide services in keeping with VA policies and medical bylaws" did not create employment relationship); *King v. United States*, 2000 WL 554190, *3 (N.D. Tex. 2000) (retirement home not agent

---

1123 Anesthesia Services is attached as Exhibit D,  Criteria And Standards For Performance Of Ambulatory (Same Day) Surgery 1102 is attached as Exhibit E.

Lusk v. U.S.   -25-
Case No. 3:10-cv-00204-RRB

of United States in spite of VA regulations which controlled aspects of its operation).

Second, the regulations themselves are not detailed, step-by-step instructions for the administration of anesthesia, but instead broad guidelines which leave the CRNA with much discretion. The VA provides anesthesia services in accordance with "agreed-upon and universally applied principles and practices" and "abides by guidelines and standards as described by the Joint Commission on the Accreditation of Health Care Organizations (JCAHO), the American Society of Anesthesiologists, and the American Association of Nurse Anesthetists." VA Handbook 1123, Ex. D, p. 1. Under the regulations "the choice of anesthetic technique and treatment of intra-operative physiologic changes rests with the anesthesia practitioner of record, whether it is an anesthesiologist or a nurse anesthetist. In facilities where nurse anesthetists practice and there is no anesthesiologist, responsibility for intra-operative anesthesia choice is determined by the anesthetist." *Id.*, p. 2. The "specific and precise requirements" of the VA Handbook cited by Mr. Lusk (Doc. 40, p. 16-19) are nothing more than generally accepted standards of care for the profession. VA Handbook 1123, p. 5 ("The following descriptions of patient care are taken from

the Standards, Guidelines, and Protocols from the American Society of Anesthesiology (ASA))"; *see also American Association of Nurse Anesthetists – Scope and Standards for Nurse Anesthesia Practice* 2010, PPM Ex. F (also available at

http://www.aana.com/resources2/professionalpractice/Documents/PPM%20Scope%20and%20Standards.pdf ).  In essence, the VA regulations tell a CRNA that he or she must collaborate with other health care professionals who are caring for the patient and exercise independent medical judgment to ensure compliance with the applicable standard of care – hardly things that the VA would expect only its employees and not its independent contractors to do.

A third factor is that the policies make no distinction between the requirements of a CRNA and a physician anesthesiologist – in fact just the opposite is true: anesthetists and anesthesiologists are given equal responsibilities for the administration of anesthesia. VA Handbook 1123, Ex. D, p. 2.

Thus, in the cases where VA regulations were at issue, courts have ruled that requiring a health care provider to comply with those regulations does not convert the provider into an independent contractor for FTCA purposes.  The VA regulations cited by Mr. Lusk are very generic and are not so detailed as to make

Lusk v. U.S.    -27-
Case No. 3:10-cv-00204-RRB

CRNA Bowler a VA employee.

## **CONCLUSION**

Based upon the foregoing, the United States requests that this Court grant

the United States' Motion for Partial Summary Judgment.


RESPECTFULLY SUBMITTED this 20th day of November, 2012, in

Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ E. Bryan Wilson
Assistant U.S. Attorney
Attorney for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2012,
a copy of the foregoing **UNITED STATES'**
**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**
was served electronically on:

Mauri Long

s/ E. Bryan Wilson


Lusk v. U.S.    -28-
Case No. 3:10-cv-00204-RRB